UNITED STATES BANKRUPTCY COURT
for the
DISTRICT OF MASSACHUSETTS

```
=======================================
                                        *
In Re:                                  *
    JAMES O. HALLET,                    *   Chapter 7
                                        *   No. 04-12307-WCH
                        Debtor          *
                                        *
=======================================
                                        *
    HOLLY A. REICH,                     *   Adversary Proc.
                        Plaintiff       *   No. 10-01145
                                        *
            vs.                         *
                                        *
    JAMES O. HALLET,                    *
                                        *
                        Defendant       *
                                        *
=======================================
```

DECISION ON MOTIONS FOR SUMMARY JUDGMENT

On May 21, 2010, Holly A. Reich ("Plaintiff") filed this adversary proceeding (the "Adversary Proceeding") against James O. Hallet ("Debtor"). In her complaint, she seeks to have certain claims against Debtor held to be nondischargeable under several provisions of Section 523(a) of the Bankruptcy Code.[1] Debtor responded

---

[1] 11 U.S.C. §§ 523(a)(4),(5), (6) and (15). Adversary Proceeding, Docket No. 1 The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), P.L. 109-8, 119 Stat. 23, was signed by the President on April 20, 2005. It provided that the bulk of its provisions (no exceptions apply here) were to be effective in cases

1

with an answer, affirmative defenses and counterclaims.[2] Plaintiff answered the counterclaims,[3] and subsequently moved for abstention with respect to the counterclaims,[4] which was opposed by Debtor.[5] That was followed by Debtor's own motion for summary judgment,[6] which Plaintiff opposed.[7] After a hearing, I took all of the related matters under advisement.[8] After consideration, I now deny both motions for summary judgment. The motion for abstention will be dealt with in a separate decision.

*Background*

The facts of this case are largely undisputed. On January 9, 1988, the Plaintiff and the Debtor married.[9] Approximately ten years later, the parties were divorced by a Consent Final Judgment of Dissolution of Marriage (the "Final Judgment") dated October 7, 1998, entered by the Circuit Court, Seventh Judicial Circuit, St. Johns

---

filed 180 days after enactment, or on October 17, 2005. Since Debtor's petition was filed on March 23, 2004, well in advance of those dates, the applicable law is the Bankruptcy Code prior to the BAPCPA amendments.

[2] Adversary Proceeding, Docket No. 7.

[3] *Id.*, Docket No. 15.

[4] *Id.*, Docket No. 33.

[5] *Id.*, Docket No. 39.

[6] *Id.*, Docket No. 40.

[7] *Id.*, Docket No. 50.

[8] *Id.*, Docket Nos. 51 and 52.

[9] *Id.*, Docket No. 40 at ¶ 1.

2

County, Florida (the "Florida Circuit Court").[10] As part of the Final Judgment, the Plaintiff was "entitled to one half of the present value . . . of the marital portion of the [Debtor's] vested and non-vested benefits in his retirement accounts from the PGA Tour."[11] As of the date of valuation, the two accounts were worth $158,799 (the "Cuts Plan") and $57,862 (the "SRA Account"), respectively.[12] Additionally, the Florida Circuit Court ordered the Debtor not to make any withdrawals from either account without the written permission of the Plaintiff.[13] The Final Judgment further provided that neither party shall receive alimony.[14]

In 2001, the Debtor withdrew all funds from the SRA Account without the Plaintiff's prior written permission.[15] As a result, the Plaintiff commenced contempt proceedings in the Florida Circuit Court.[16] Ultimately, Circuit Judge Alexander found the Debtor in contempt, concluding that he had "egregiously and perhaps criminally invaded the Former Wife's one-half interest," and ordered him to pay the Plaintiff $30,000 on account of her one half interest in the SRA Account within 30 days of his

---

[10] *Id.*, Docket No. 40 at ¶ 2; Ex. H.

[11] *Id.*, Docket No. 40 at ¶ 3; Ex. H at ¶ 9(f).

[12] *Id.*

[13] *Id.*

[14] *Id.*, Docket No. 40 at ¶ 4; Ex. H at ¶ 10.

[15] *Id.*, Docket No. 40 at ¶ 8.

[16] *Id.*, Docket No. 40 at ¶ 9.

order.[17] The Debtor failed to do so and was incarcerated for 179 days.[18]

In an attempt to purge his contempt, the Debtor filed an emergency motion requesting that the Florida Circuit Court order an additional $30,000 assignment of his interest in the Cuts Plan.[19] On November 14, 2002, Circuit Judge Alexander entered an order directing the Debtor to prepare and submit to the court a Qualified Domestic Relations Order ("QDRO") containing the additional assignment "to replace the $30,000 the Former Husband stole from the Former Wife's retirement accounts."[20] Circuit Judge Alexander noted, however, that "[w]hether the PGA will honor the QDRO" remained an issue.[21] Indeed, the parties each made an attempt to draft the QDRO only to find that the PGA Tour would not honor it in light of the Cuts Plan's anti-alienation provisions.[22]

On March 26, 2003, the Plaintiff filed a civil action (the "Civil Action") in the Florida Circuit Court alleging that the Debtor had stolen her legally recognized property interest in the SRA Account.[23] The Debtor did not appear or defend against

---

[17] *Id.*, Docket No. 40 at ¶ 10; Ex. J, K.

[18] *Id.*, Docket No. 40 at Ex M.

[19] *Id.*, Docket No. 40 at Ex. N.

[20] *Id.*, Docket No. 40 at Ex. O.

[21] *Id.*

[22] *Id.*, Docket No. 40 at ¶¶ 13-16.

[23] *Id.*, Docket No. 40 at ¶ 17; Ex. S.

4

the Civil Action, and on May 9, 2003, Circuit Judge Traynor entered a Final Judgment in the amount of $98,192.45, including treble damages and attorney's fees, against the Debtor (the "Civil Judgment").[24]

In light of the parties failed attempts to produce a QDRO acceptable to the PGA Tour, on May 9, 2003, Circuit Judge Alexander ordered the PGA Tour and the Plaintiff to work together and prepare an appropriate QDRO within 30 days.[25] On January 12, 2004, Circuit Judge Alexander entered a QDRO incorporating the full amount of the Civil Judgment and identifying the Plaintiff as an alternate payee.[26] The PGA Tour, however, refused to accept the Plaintiff's "alternate payee" status as created by this order and its subsequent amendment.[27]

On March 23, 2004, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code (the "Main Case").[28] On Schedule F - Creditors Holding Unsecured Nonpriority Claims ("Schedule F"), he listed claims of "Holly Ann Hallet/Reich" in the amounts of $98,456.00 and $10,500.00, each described as

---

[24] *Id.*, Docket No. 40 at ¶ 17; Ex. T.

[25] *Id.*, Docket No. 40 at ¶ 18; Ex. U.

[26] *Id.*, Docket No. 40 at ¶¶ 19-20; Ex. W.

[27] *Id.*, Docket No. 40 at ¶¶ 21-24.

[28] I take judicial notice of the dockets both of the main case and this adversary proceeding. Hermosilla v. Hermosilla (*In re* Hermosilla), 2011 WL 2160257 *1, fn 2 (Bankr. D. Mass. June 1, 2011) (citing *Rodi v. So. N.E. School of Law*, 389 F.3d 5, 18-19 (1st Cir. 2004)).

5

"Property award divorce proceeding."[29]  I granted Debtor his discharge on September 2, 2004.[30]  The case was closed on September 16, 2004.[31]

Debtor was not entitled to funds from the Cuts Plan until he turned 50, which event occurred on March 30, 2010.[32]  In anticipation of that event, Plaintiff made demand for the funds in a letter of January 1, 2010.[33]

On February 19, 2010, Debtor moved to reopen the Main Case.[34]  He asserted that Plaintiff's claims had been discharged in the Main Case as Plaintiff had not sought a determination of nondischargeability under the then operative statute, 11 U.S.C. § 523(a)(15), and that her demand violated the discharge injunction.[35]  He prayed that I find Plaintiff in contempt and impose damages and fees resulting therefrom.[36]  The Motion to Reopen was granted by endorsement; no damages or

---

[29] Main Case, Docket No. 1, Schedule F. The claims are scheduled in the same way in the amended Schedule F subsequently filed. *Id.*, Docket No. 7.  I take judicial notice of the dockets both of the main case and this adversary proceeding.  In her adversary complaint, Plaintiff asserts that while scheduled, she was not listed on the matrix of creditors.  Adversary Proceeding, Docket No. 1, ¶ 3.  Defendant answered that Plaintiff's attorney was listed on the matrix.  Adversary Proceeding, Docket No. 7, ¶ 4.  Neither party has questioned whether Plaintiff had notice of the Main Case.

[30] Main Case, Docket No. 14.

[31] *Id.*, Docket No. 16.

[32] *Id.*, Docket No. 17, Exhibit A, ¶¶ 8, 9.

[33] *Id.*, ¶ 10.

[34] Main Case, Motion to Reopen, Docket No. 17.

[35] *Id.*, ¶¶ 11, 13.

[36] *Id.*, prayer for relief.

6

fees were awarded.[37]

Plaintiff then filed her "Former-Spouse's Emergency Motion for Relief from Stay, Motion to Recognize and Give Full Force and Effect to Florida's Divorce Judgment and Order, or in the Alternative Order that Relief is Not Necessary."[38] Debtor did not respond to the motion and the proposed order which accompanied it[39] was entered on March 30, 2010.[40] It provided:

> 1. The reopening of the Debtor's Chapter 7 case did not create a stay against [Plaintiff's] actions in attempting to exercise and enforce the DRO issued by the Circuit Court on January 12, 2004, the Consent Order dated October 7, 1998, and the Final Judgment issued on May 9, 2003, regarding [Plaintiff's] ½ interest, plus $98,192.45 plus interest in the Debtor's ½ interest in his contingent interest in the PGA Tour Deferred Compensation Player Retirement Plan.
>
> 2. [Plaintiff] is granted Relief from the Automatic Stay imposed pursuant to 11 USC 362(a) to exercise and enforce the DRO issued [as aforesaid].
>
> 3. The automatic stay presently in effect is hereby modified and/or lifted so that the Circuit Court in the divorce proceedings between the Debtor and [Plaintiff], may complete its adjudication of the matter, including without limit (*sic*) the transfer of the Debtor's contingent interest in the PGA Tour Deferred Compensation Player Retirement Plan to the extent it has not already been accomplished and the for enforcement of the transfer.
>
> 4. [Plaintiff's] actions in attempting to exercise and enforce the DRO

---

[37] *Id*., Docket No. 18.  The prayers for damages and fees are not self-executing.

[38] *Id*., Docket No. 20.

[39] A proposed order is required by MLBR 4001-1(a).

[40] Main Case, Docket No. 26.

issued by the Circuit Court on January 12, 2004, the Consent Order dated October 7, 1998, and the Final Judgment issued on May 9, 2003, was not in violation of the Debtor's discharge.

5. The claim that [Plaintiff] holds against the Debtor for $98,192.45 is a claim that is potentially non-dischargeable pursuant to 11 U.S.C. Sec. 523(4),(6) and/or (15) (*sic*), and the Court issues [Plaintiff] a new deadline in which to object to the dischargeability of the debt owed by Debtor of May 21, 2010.

6. The fourteen day stay of relief, pursuant to Federal Bankruptcy Rule 4001(a)(3), is waived.

On May 21, 2010, the deadline set forth by the proposed order, Plaintiff filed the present adversary proceeding. In her verified complaint she contends that the Civil Judgment[41] is not dischargeable as a domestic support obligation under 11 U.S.C. § 523(a)(5) (Count I); as a debt resulting from fraud or defalcation in a fiduciary capacity, embezzlement or larceny under 11 U.S.C. § 523(a)(4) (Count II); resulting from willful and malicious injury under 11 U.S.C. § 523(a)(6) (Count III); or as a non-domestic relations obligation due spouse under 11 U.S.C. § 523(a)(15) (Count IV).

Debtor answered, presented affirmative defenses, and counterclaimed.[42] In Count I of his counterclaims, Debtor asserts various infirmities in Plaintiff's claims and then seeks a declaratory judgment that "there exists actual and justiciable

---

[41] Notwithstanding Debtor's belief to the contrary, the adversary proceeding complaint only implicates the Civil Judgment, and not the other sums which Plaintiff may assert are also not dischargeable. *See* Memorandum of James O. Hallet in Support of Motion for Summary Judgment ("Debtor Memo in Support"), p. 1.

[42] Adversary Proceeding, Docket No. 7.

controversies between the parties as to whether the creditor's claims against the debtor . . . were discharged, or dischargeable, in the debtor's Chapter 7 bankruptcy proceedings."[43] In Count II of the counterclaims, he seeks a declaratory judgment that the other claims were dischargeable and, if any portion is held not dischargeable, then "all monies paid by the debtor towards one or both of those claims must be set off against any amount not discharged."[44]

Debtor then moved for summary judgment as to Counts I, II and III of the complaint.[45] In her opposition, Plaintiff sought summary judgment on both counts of Debtor's counterclaims.[46]

I have not received any evidence of activity in the Florida Circuit Court.

*The Flaw in Debtor's Motion*

Massachusetts Local Bankruptcy Rule 7056-1 makes District Court Local Rule 56.1 applicable to proceedings in the bankruptcy court. It provides that

> Motions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends that there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. *Failure to include such a statement constitutes grounds for denial of the motion.* Opposition to motions for summary judgment shall include a concise statement of the material facts of record as to which it is contended that there exists a

---

[43] *Id.*, ¶ 32.

[44] *Id.*, ¶ 36, prayers for relief f, g.

[45] Adversary Proceeding, Docket No. 40.

[46] Adversary Proceeding, Docket No. 49.

genuine issue to e tried, with page references to affidavits, depositions and other documentation. Copies of all referenced documentation shall be filed as exhibits to the motion or opposition. Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statements required to be served by opposing parties.[47]

Debtor's motion failed to include a required statement of undisputed facts labeled as such. However, his memorandum supporting his motion for summary judgment does contain a section titled "Factual Background." The statements in that section are supported by record references. I will treat that as the required statement of undisputed facts.

*The Summary Judgment Standard*

Fed. R. Civ. P. 56, made applicable to adversary proceedings by Fed. R. Bankr. P. 7056, governs motions for summary judgment. It provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[48]

The burden of proof is upon the moving party in the first instance.[49] To defeat the motion, the opposing party must produce substantial evidence of a genuine dispute as to a material fact.[50] A material fact is one which has the "potential to

---

[47] L.R., D. Mass. 56.1 (emphasis added).

[48] Fed. R. Civ. P. 56(a).

[49] *In re* Wang Laboratories, Inc., 155 B.R. 289, 290 (Bankr. D. Mass. 1993).

[50] Darr v. Muratore, 8 F.3d 854, 859 (1st Cir. 1993); Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied* 425 U.S. 904 (1976).

affect the outcome of the suit under applicable law."[51]

In making its determination, the court must view the facts and draw inferences in the light most favorable to the party opposing the motion, and must indulge all inferences favorable to that party.[52] Summary judgment must be denied if inferences necessary to the judgment are not mandated by the record.[53]

"[T]he nonmoving party . . . bears the burden of placing at least one material fact into dispute after the movant offers evidence of the absence of a genuine issue. We have recognized that, '[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.' This being the rule, '[b]rash conjecture, coupled with earnest hope that something concrete will materialize, is insufficient to block summary judgment.'" [54]

*Debtor's Motion: Count I*

Plaintiff's Count I states that "to the extent the Plaintiff does not own an ownership interest in $98,192.45 plus interest in the Debtor's one-half interest in the

---

[51] Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

[52] Morris v. Government Development Bank, 27 F.3d 746, 748 (1st Cir. 1994); Oliver v. Digital Equipment Corp., 846 F.2d 103, 105 (1st Cir. 1988).

[53] *See* Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 (1st Cir. 1992)(summary judgment is precluded "unless no reasonable trier of fact could draw any other inference from the 'totality of the circumstances' revealed by the undisputed evidence").

[54] FDIC v. Anchor Properties, 13 F.3d 27, 30 (1st Cir. 1994). (citations omitted).

11

PGA Tour Plan, the Civil Judgment constitutes a domestic support obligation pursuant to 11 U.S.C. Section 101(14A). Domestic Support obligations are not dischargeable pursuant to Section 523(a)(5)."[55]

My initial problem is that the concept of "domestic support obligation" did not exist prior to the effective date of BAPCPA.[56] To avoid further complications, I will construe Count I as referring to Section 523(a)(5) prior to the BAPCPA amendment, when it read that, among debts not discharged, was a debt

> to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that . . . such debt includes a liability designated as alimony, maintenance, or support unless such liability is actually in the nature of alimony, maintenance, or support;

Inherent in Plaintiff's statement that she has a nondischargeable claim "to the extent the Plaintiff does not own an ownership interest in [the Plan]," is the assumption that if the Florida court had awarded Plaintiff a property interest, she would not have a claim in this bankruptcy. Debtor seems to adopt this same view as he contends that "the divorce court orders ... merely created dischargeable debts and did not operate as a conveyance of one-half of any property interest...."[57]

---

[55] Adversary Proceeding, Docket No 1, ¶¶ 20-21.

[56] See footnote 1.

[57] Debtor's Motion for Summary Judgment, Adversary Proceeding Docket No. 40, Attachment #1 (Memorandum), p. 10.

12

This argument does not follow.

Even if the effect of the Florida Circuit Court's order was to grant the Plaintiff a property interest in the SRA Account, the transfer was not effectuated because Debtor withdrew the funds without paying her. Therefore, Debtor owes something to Plaintiff. Whatever that something is, it is a "debt," which means liability on a claim,[58] and a "claim" means

> right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.[59]

In any event, the issue of whether a debt is in the nature of alimony, support, or maintenance is determined by bankruptcy law, not state law, and the appellation given to the debt is not determinative of the issue.[60]

Plaintiff fails to make any other argument as to Count I.

Count I seeks to hold a claim to be nondischargeable, an issue which Debtor disputes. Inasmuch as the parties disagree upon the meaning of the Florida Circuit Court's orders, I find that the orders themselves are clear on their face. That being said, given the history of proceedings in the Florida Circuit Court, the effect of those orders is somewhat unclear. Moreover, in light of the fact that I granted relief from

---

[58] 11 U.S.C. § 101(12).

[59] 11 U.S.C. § 101(5)(A).

[60] Peterson v. Fagan (*In re* Fagan), 144 B.R. 204, 205 (Bankr. D. Mass. 1992), and cases cited.

13

stay over a year ago to allow the parties to return to the Florida Circuit Court and clarify these orders and have no further information as to those proceedings, summary judgment must be denied as to Count I.

*Debtor's Motion: Count II*

Plaintiff's Count II asserts that Debtor's obligation to her is nondischargeable because it resulted from fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.[61]

Debtor's argument is that the Florida Circuit Court had no power to transfer a property interest to Plaintiff, and, as a result, the Civil Judgment that Debtor committed a civil theft of Plaintiff's property was in error and cannot be used as a ground to deny the discharge of the obligation under 11 U.S.C. § 523(a)(4). As outlined by Plaintiff,

> On May 9, 2003, after [Debtor] failed to defend, Civil Judge Traynor issued a final judgment (the "Civil Theft Judgment") in the Civil Action determining that on March 2, 2001, [Debtor] took property belonging to [Plaintiff] in the amount of $30,102.19 "with felonious intent to steal Plaintiff's property, and [Debtor] knowingly obtained and used said property with the intent to either temporarily or permanently deprive Plaintiff of her right to her property or a benefit from the property.[62]

Debtor is seeking to have me overrule the Florida judges. I cannot do that

---

[61] 11 U.S.C. § 523(a)(4).

[62] Opposition of Plaintiff Holly A. Reich to Debtor James Hallet's Motion for Summary Judgment and Cross Motion for Summary Judgment as to Counts I and II of Hallet's Counterclaim, ¶ 17.

14

under the *Rooker-Feldman* doctrine.[63] As I held in *Schwartz*, quoting the United States Court of Appeals for the Sixth Circuit, "lower federal courts lack jurisdiction over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments."[64]

"For purposes of section 523(a)(4), a bankruptcy court is not bound by the state law definition of larceny but, rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of same.'"[65] The Civil Judgment, as incorporated into the subsequent QDROs, satisfies that requirement. It is not necessary to investigate the other possible grounds for nondischargeability under this section.

Debtor's motion for summary judgment must be denied as to Count II.

---

[63] The doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker*, the Supreme Court of the United States held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. 263 U.S. at 415-16. In *Feldman*, the Supreme Court held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. 460 U.S. at 486-87.

[64] Schwartz v. Schwartz (*In re* Schwartz), 376 B.R. 364, 368-69 (Bankr. D. Mass. 2007) (*quoting* Davis v. United States, 499 F.3d 590 (6th Cir. 2007)). (internal quotations omitted).

[65] 4 *Collier on Bankruptcy* ¶ 523.10[2] (16th ed. Rev. 2011)(citing *In re* Smith, 253 F.3d 703 (5th Cir. 2001)(not for publication); *In re* Rose, 934 F.2d 901 (7th Cir. 1991)).

*Debtor's Motion: Count III*

Debtor's sole argument against nondischargeability under 11 U.S.C. § 523(a)(6) is, once again, Plaintiff's purported lack of a property interest. The Florida Circuit Court found otherwise and I cannot go behind that decision. The motion must be denied as to Count III.

*Plaintiff's Motion: Counterclaim Counts I and II*

Plaintiff's cross-motion for summary judgment as to the two counts of Debtor's counterclaim prays that I "enter Judgment . . . declaring that [Plaintiff] was granted property interests in the PGA Tour Plans that are not subject to discharge."[66] As to the former, I am bound by the Florida Circuit Court's decision. As to the latter, there are disputed issues of fact which preclude summary judgment. Plaintiff's cross-motion must be denied.

---

[66] Adversary Proceeding, Docket No. 49, p. 13.

*Conclusion*

Both Debtor's and Plaintiff's motions for summary judgment are DENIED.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: July 20, 2011

COUNSEL APPEARING
    David B. Madoff, Steffani M. Pelton, Madoff & Khoury LLP,
      Foxborough MA, for Plaintiff
    Lois M. Farmer, Gerald S. Garnick, Garnick & Scudder P.C.,
      Hyannis MA, for Debtor