UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
JAMES O. HALLET,                                  Chapter 7
    DEBTOR.                                     Case No. 04-12307-WCH

HOLLY A. REICH,
    PLAINTIFF,
                                                  Adversary Proceeding
v.                                                No. 10-1145

JAMES O. HALLET,
    DEFENDANT.

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

This matter comes before the Court after a status conference requested by the plaintiff Holly A. Reich (the "Plaintiff") regarding a perceived inconsistency in my Memorandum of Decision dated July 20, 2011 (the "Decision"), in which I denied both parties' motions for summary judgment. Upon reconsideration, I find that in light of the findings of fact and conclusions of law included in the Decision, summary judgment should have entered in favor of the Plaintiff on her claim under 11 U.S.C. § 523(a)(4). Therefore, for the reasons set forth below, I will vacate my prior order and enter judgment in favor of the Plaintiff.

**II. BACKGROUND**

The facts of this case are few and undisputed, but remarkably convoluted. I repeat only those necessary to frame the issue and otherwise incorporate the Decision herein by reference.[1]

---

[1] *Reich v. Hallet (In re Hallet)*, No. 10-1145, 2011 WL 2975682 (Bankr. D. Mass. July 20, 2011).

1

James O. Hallet (the "Debtor") and the Plaintiff are former spouses.[2] On October 7, 1998, the parties were divorced by a Consent Final Judgment of Dissolution of Marriage (the "Final Judgment") entered by the Circuit Court, Seventh Judicial Circuit, St. Johns County, Florida (the "Florida Circuit Court").[3] As part of the Final Judgment, the Plaintiff was "entitled to one half of the present value . . . of the marital portion of the [Debtor's] vested and non-vested benefits in his retirement accounts from the PGA Tour."[4] As of the date of valuation, the two accounts were worth $158,799 (the "Cuts Plan") and $57,862 (the "SRA Account"), respectively.[5] The Florida Circuit Court further ordered the Debtor not to make any withdrawals from either account without the written permission of the Plaintiff.[6]

Despite the clear directive of the Florida Circuit Court, the Debtor withdrew all funds from the SRA Account without the Plaintiff's prior written permission.[7] Predictably, the Plaintiff commenced contempt proceedings in the Florida Circuit Court.[8] Circuit Judge Alexander found the Debtor in contempt, concluding that he had "egregiously and perhaps criminally invaded the Former Wife's one-half interest," and ordered him to pay the Plaintiff

---

[2] *Id.* at 1.

[3] *Id.*

[4] *Id.* (*quoting* Docket No. 40 at ¶ 3; Ex. H at ¶ 9(f)).

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

2

$30,000 on account of her one half interest in the SRA Account within 30 days of his order.[9] The Debtor failed to do so and was incarcerated for 179 days.[10]

In an attempt to purge his contempt, the Debtor filed an emergency motion requesting that the Florida Circuit Court order an additional $30,000 assignment of his interest in the Cuts Plan.[11] Circuit Judge Alexander entered an order directing the Debtor to prepare and submit to the court a Qualified Domestic Relations Order ("QDRO") containing the additional assignment "to replace the $30,000 the Former Husband stole from the Former Wife's retirement accounts."[12] The parties attempted to comply, but discovered that the PGA Tour would not honor the draft QDRO in light of the Cuts Plan's anti-alienation provisions.[13]

Ultimately, the Plaintiff filed a civil action (the "Civil Action") in the Florida Circuit Court alleging that the Debtor had stolen her legally recognized property interest in the SRA Account.[14] The Debtor did not appear or defend against the Civil Action, and on May 9, 2003, Circuit Judge Traynor entered a Final Judgment in the amount of $98,192.45, including treble damages and attorney's fees, against the Debtor (the "Civil Judgment").[15]

---

[9] *Id.* (*quoting* Docket No. 40 at ¶ 10; Ex. J, K).

[10] *Id.*

[11] *Id.*

[12] *Id.* (*quoting* Docket No. 40 at Ex. O).

[13] *Id.*

[14] *Id.* at 2.

[15] *Id.*

Further proceedings followed before Circuit Judge Alexander, resulting in him entering a QDRO incorporating the full amount of the Civil Judgment.[16] Again, the PGA Tour refused to accept the order in light of the anti-alienation provisions of the Cut's Plan.[17]

Although it is an over simplification of the procedural history of this case, it suffices to say that the Debtor filed a voluntary Chapter 7 petition and the Plaintiff commenced the present adversary proceeding seeking a determination that the Civil Judgment is nondischargeable under 11 U.S.C. §§ 523(a)(4), (a)(5), (a)(6), or (a)(15).[18] Both parties filed motion for summary judgment as to all counts except the count under 11 U.S.C. § 523(a)(15), and I took the matter under advisement.[19]

On July, 20, 2011, I issued the Decision and entered an order denying both parties motions for summary judgment.[20] In relevant part, I concluded that it was irrelevant to the analysis under 11 U.S.C. § 523(a)(5) whether the Florida Circuit Court intended to grant the Plaintiff a property interest because however characterized, she held a claim within the meaning of 11 U.S.C. § 101.[21] In so doing, I noted that such a transfer was not effectuated, but conceded that the effect of the Florida Circuit Court's orders was somewhat unclear given the history of the proceedings.[22] I further noted that I previously granted the parties relief from stay to return

---

[16] *Id.*

[17] *Id.*

[18] *Id.* at 2-3.

[19] *Id.* at 3.

[20] *Id.* at 1.

[21] *Id.* at 5.

[22] *Id.*

4

to the Florida Circuit Court to clarify these orders and as such, reasoned that their progress, or lack thereof, constituted a material fact not in the record, thus precluding summary judgment.[23]

At the same time, I refused to grant summary judgment to the Debtor with respect to the Plaintiff's claim under 11 U.S.C. § 523(a)(4) as a debt resulting from fraud or defalcation in a fiduciary capacity, embezzlement or larceny, reasoning that the Debtor was asking me to overrule the Florida judges in contravention of the *Rooker-Feldman*[24] doctrine.[25] I further found that the Civil Judgment satisfied the definition of larceny under 11 U.S.C. § 523(a)(4), and stated that "[i]t is not necessary to investigate the other possible grounds for nondischargeability under this section."[26] Nonetheless, based upon my prior concerns, I concluded summary judgment should not enter in favor of the Plaintiff either.[27]

On October 25, 2011, the Plaintiff filed her request for a status conference on October 25, 2011, which I subsequently granted. I held the status conference on November 18, 2011, at which time the parties expressed confusion as to what issues remained to be tried, as I had concluded that I could not look behind the Florida Circuit Court's judgments and found that the Civil Judgment satisfied the definition of larceny under 11 U.S.C. § 523(a)(4), but nonetheless did not enter summary judgment in favor of the Plaintiff. In light of my findings, the parties

---

[23] *Id.*

[24] The doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker*, the Supreme Court of the United States held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. 263 U.S. at 415-16. In *Feldman*, the Supreme Court held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. 460 U.S. at 486-87.

[25] *In re Hallet*, 2011 WL 2975682 at *6.

[26] *Id.* Although I said "section" in this passage, I meant to say "subsection," meaning I need not consider whether it was an embezzlement or defalcation while acting in a fiduciary capacity.

[27] *Id.*

5

agreed that a trial was unnecessary and that summary judgment should enter. Still, the Debtor expressed concern that ambiguities in the procedural history might adversely affect his appellate rights, particularly as I had not addressed his collateral estoppel arguments in the Decision. At the conclusion of the status conference, I directed the parties to submit an agreed form of order. They did so, but I ultimately decided that an additional memorandum was necessary to resolve any inconsistencies in my prior Decision.

## III. DISCUSSION

Pursuant to Fed. R. Civ. P. 60(b), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect. . . ."[28] Admittedly, there is a circuit level split of authority over whether a court may grant relief under Fed. R. Civ. P. 60(b) *sua sponte*,[29] and the United States Court of Appeals for the First Circuit has not yet decided the issue.[30] Thankfully, I need not join the fray because I may, in any event, construe the Plaintiff's Request for a Status Conference as a motion for relief from judgment under Fed. R. Civ. P. 60(b). Additionally, as both parties were aware of why the

---

[28] Fed. R. Civ. P. 60(b)(1), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024.

[29] *Compare Eaton v. Jamrog*, 984 F.2d 760, 762 (6th Cir. 1993) (holding that Fed. R. Civ. P. 60(b) bars *sua sponte* relief), and *Dow v. Baird*, 389 F.2d 882, 884-885 (10th Cir. 1968) (same), *with Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001) (finding that Fed. R. Civ. P. 60(b) permits *sua sponte* relief), *Kingvision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 351-352 (9th Cir. 1999) (same), *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962) (same), and *United States v. Jacobs*, 298 F.2d 469, 472 (4th Cir. 1961) (suggesting that *sua sponte* relief may be appropriate under Fed. R. Civ. P. 60(b) in some cases). *See also Burnam v. Amoco Container Co.*, 738 F.2d 1230, 1232 (11th Cir. 1984) (the district court has the inherent authority to grant *sua sponte* relief if it complies with Fed. R. Civ. P. 59(e)'s ten-day limit); *Sun-Tek Indus., Inc. v. Kennedy Sky Lites, Inc.*, 848 F.2d 179, 181 (Fed. Cir. 1988) (applying Eleventh Circuit procedural law).

[30] *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33, 37 (1st Cir. 2006) (finding that the court need not reach the issue because even assuming that a district court may on its own motion substantially modify the terms of a preliminary injunction to the substantial detriment of a party's property interest, it may not do so without giving prior notice to the parties and an opportunity to be heard).

6

status conference was requested and each was given an opportunity to be heard, any requirement regarding notice and a hearing was satisfied.[31]

Upon reconsideration, I find that in my attempt to reconcile two discordant concepts, namely, the possibility that a property transfer was not effectuated by the Final Judgment but that such a finding was prerequisite for a finding of civil theft, I failed to give sufficient weight to the Civil Judgment as incorporated by the QDRO.

Starting from the beginning, the Debtor argues that the Civil Judgment is inherently defective because it is premised on the idea that he stole property from the Plaintiff, when, as a matter of law, the Final Judgment could not have conveyed a property interest. Even assuming, *arguendo*, that the Debtor is correct and the Civil Judgment is based on an erroneous finding about the effect of the Final Judgment, I cannot, under the *Rooker-Feldman* doctrine, relieve him of it or make findings contrary to it. The Debtor attempts to refute this point by asserting that the Civil Judgment, which was obtained by default, is not entitled to preclusive effect.[32] Under Florida law, however, a "pure default" where there is no participation by the defendant satisfies the "fully litigated" requirement of collateral estoppel.[33] In any event, this argument ignores the fact that the Civil Judgment was incorporated into the QDRO. Indeed, Circuit Judge Alexander necessarily had to have accepted Circuit Judge Traynor's conclusion that the Debtor's liquidation of the SRA Account amounted to civil theft by virtue of his reference to and incorporation of the

---

[31] *Id.*

[32] I must look to state law to determine the preclusive effect of a prior state court judgment. *New Hampshire Motor Transp. Ass'n v. Town of Plaistow*, 67 F.3d 326, 328 (1st Cir. 1995). Under Florida collateral estoppel law, a judgment will be given preclusive effect in a subsequent proceeding where: (1) the parties are identical in the initial and subsequent actions;(2) the issues are identical in the initial and subsequent actions; and (3) the matter has been fully litigated in a court of competent jurisdiction. *See Dep't of Health and Rehabilitative Services v. B.J.M.*, 656 So.2d 906, 910 (Fla. 1995). The Debtor does not dispute that the other elements of collateral estoppel are present.

[33] *See Masciarelli v. Maco Supply Corp.*, 224 So.2d 329 (Fla.1969); *Avant v. Hammond Jones, Inc.*, 79 So.2d 423 (Fla.1955); *see also Lasky v. Itzler (In re Itzler)*, 247 B.R. 546, 552 (Bankr. S.D. Fla. 2000);

7

treble damage award in the QDRO. The Debtor does not dispute that he was involved in the contempt proceedings before Circuit Judge Alexander. To the contrary, the QDRO was the direct result of his earlier attempt to purge his contempt. He cannot now claim that this point was not actually litigated or that he did not have a fair opportunity to defend himself.

For purposes of this adversary proceeding, I need only accept that the debtor committed an act that satisfies the definition of larceny as that term is used in 11 U.S.C. § 523(a)(4). Therefore, it is irrelevant whether the Final Judgment actually transferred a property interest, because the QDRO found that one was stolen, and that is enough. Accordingly, I must enter summary judgment in favor the Plaintiff and hold the debt nondischargeable under 11 U.S.C. § 523(a)(4).

## IV. CONCLUSION

In light of the foregoing, I will enter an order vacating my July 20, 2011 order denying the Plaintiff's motion for summary judgment and holding that the Plaintiff's debt is nondischargeable under 11 U.S.C. § 523(a)(4).

_____
William C. Hillman
United States Bankruptcy Judge

Dated: December 19, 2011


Counsel Appearing:

    David B. Madoff, Steffani M. Pelton, Madoff & Khoury LLP, Foxborough, MA,
        for the Plaintiff
    Lois M. Farmer, Garnick & Scudder, P.C., Hyannis, MA,
        for the Debtor